FAIR, J.,
dissenting.
¶ 46. At trial, Courtney alleged she was entitled to a divorce because she felt'it was not “safe” to live with Rodney anymore. Her proof offered for the divorce was incredibly cursory, and her testimony on this point consisted entirely of her attorney asking her whether she felt unsafe, and her answering in the affirmative. She also agreed, in another one-word answer, that the allegations she had previously made in her attempts to get Rodney committed were true. But at no point did she allege that Rodney hurt her or threatened her. Apparently Courtney intended to rely on insinuations that Rodney’s mental illness made him dangerous.
¶ 47. The trial judge does not seem to have accepted Courtney’s claims that Rodney was dangerous, except to the extent that he found that Rodney “acted at times erratically and incoherently[,] causing the marriage to break down.” I agree that the record supports that finding, but I must dissent because occasional erratic or incoherent behavior is not grounds for divorce.
¶ 48. The majority fairly relays Courtney’s allegations against Rodney in the commitment proceedings, though I should point out that they are a series of anecdotes collected over, several years rather than descriptions of continuing behavior. And Courtney backtracked from the most important allegation on cross-examination. The first time she attempted to have Rodney committed, Courtney alleged various erratic but harmless statements Rodney had made, but she topped it off with the claim that he had been carrying a loaded gun in his waistband. Her affidavit implied that this was.regular and continuing behavior, but on cross-examination at trial she admitted it had only happened twice. In both instances Rodney was inside his own home, and he was armed because he feared a stranger may have come into the house. Courtney even admitted she did not know whether Rodney had real cause to be alarmed in either instance; in fact, one of the doors to the home was broken and could not be locked. Moreover, these incidents occurred at some unspecified time prior to the first commitment proceeding, long before the separation and divorce. Courtney did not testify that it had happened again since.
¶49. Courtney described Rodney as disagreeable and paranoid. She did allege that he sometimes involved her in his delusions, but she never described him as responding to perceived persecutions with violence. In fact, Courtney never alleged that Rodney hurt her, tried to hurt her, or threatened her — or that he had ever done anything like that to anyone else. The most recent psychological evaluation, following Courtney’s sec *1256 ond attempt to have Rodney committed, described him as “[n]onthreatening, nonviolent, [and] cordial” and relayed that he had been “observed in ward for one week without incident of violence or threats.” Past indications of concern by medical professionals seem to have been largely based on Courtney’s misleading allegations rather than examination or observation of Rodney. And at no point did any medical professional ever indicate that Rodney presented a' “substantial likelihood of physical harm” to anyone.
IT 50. Rodney represented himself at trial, and, although it may be tempting to joke that one would have to be crazy to do so, so far as the record reveals he appeared to be coherent and rational throughout the litigation. His brief on appeal is not only coherent, it is exceptional for a layman. At all relevant times throughout, Rodney has been able to hold down a high-paying job with the Internal Revenue Service.
¶ 51. After the second unsuccessful attempt to have Rodney committed, his doctors • apparently discontinued whatever medication he. had previously been prescribed. Courtney testified that when Rodney was not on the medication he was disagreeable and “impossible” to live with, and that was why she left him.
¶ 52. That Rodney’s actions “caused the marriage to break down” is insufficient to prove habitual cruel and inhuman treatment. Instead, Courtney was required to show conduct that either:
(1) endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or
Richard v. Richard, 711 So.2d 884, 889 (¶ 22) (Miss.1998). There is no allegation of unnatural or infamous conduct, nor has that been asserted in Courtney’s brief on appeal; so the issue is whether there was proof of conduct by Rodney that “endangered life, limb, or health” or created a reasonable fear of such. Courtney did not prove this.
¶ 53. Mississippi law specifically allows for divorce when one spouse is suffering from incurable mental illness. But the Legislature, in the exercise of its exclusive authority to make laws, does not allow divorce for just any mental illness; it must be so severe that the “offending;” spouse has been institutionalized for three years prior to the commencement of the divorce action. See Miss.Code Ann. § 93-5-1 (Rev.2018). That did not happen in this case, and Courtney’s attempt to “end around” the statute by appealing to the stigma of mental illness should fail. “Divorce is a creature of statutef,] ... not a gift to be bestowed by the chancellor.” Hemsley v. Hemsley, 689 So.2d 909, 912 (Miss.1994) (citation omitted). It “is a statutory act and the statutes must be strictly followed as they are in derogation of the common law.” Id.
¶ 54. I respectfully dissent.
GRIFFIS, P.,1, BARNES, ISHEE AND WILSON, JJ., JOIN THIS OPINION.